RONALD M. THOMPSON *v.* COMMISSIONER OF CORRECTION
(AC 25583)

McLachlan, Harper and Freedman, Js.

Argued March 30—officially released September 6, 2005

*H. Owen Chace*, special public defender, for the appellant (petitioner).

*Christine Collyer*, special deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Angela R. Macchiarulo*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

FREEDMAN, J. The petitioner, Ronald M. Thompson, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. The court granted the petition for certification to appeal. On appeal, the petitioner claims that the court improperly concluded that (1) he received effective assistance of counsel with regard to his conviction of two counts of

failure to appear in the first degree and (2) he was not actually innocent regarding the failure to appear charges. We agree that the petitioner did not receive effective assistance of counsel with regard to his conviction on the first count of failure to appear.[1] Accordingly, we reverse the judgment of the habeas court as to the first count of failure to appear and affirm the judgment as to the second count of failure to appear.

The following facts and procedural history are relevant to the resolution of the petitioner's claims. The petitioner was arrested in 1986 and charged with various offenses including sexual assault in the second degree and risk of injury to a child. The petitioner failed to appear for trial on those charges on March 2, 1989, and a failure to appear warrant was issued on March 15, 1989. The warrant was served on the petitioner on September 26, 1998, approximately nine and one-half years after the warrant was issued. On March 6, 2000, the petitioner again failed to appear for a hearing, and a second failure to appear warrant was issued. The petitioner eventually was convicted, following a jury trial, of sexual assault in the second degree, risk of injury to a child and two counts of failure to appear in the first degree.[2] On July 13, 2000, the petitioner was sentenced to serve eight years for sexual assault in the second degree, eight years for risk of injury to a child to be served concurrently with the sentence for sexual assault in the second degree, and one year for each of the counts of failure to appear in the first degree, to be served concurrently with each other and consecutive to the eight year sentence for a total sentence of nine years incarceration.

---

[1] In light of that conclusion, it is unnecessary to address the petitioner's claim of actual innocence regarding that failure to appear count.

[2] The petitioner's conviction was affirmed on appeal. *State* v. *Thompson*, 71 Conn. App. 8, 799 A.2d 1126 (2002).

The petitioner filed a second amended petition for a writ of habeas corpus,[3] claiming ineffective assistance of counsel and actual innocence with regard to his conviction on the failure to appear counts.[4] Specifically, with regard to the first failure to appear count, the petitioner argued that his trial counsel was ineffective in failing to file a motion to dismiss that count because of the delay between the issuance and the execution of the warrant. With regard to the second failure to appear count, the petitioner argued that his trial counsel was ineffective in her efforts to notify him of his March 6, 2000 court date. Following a hearing, the court found that the petitioner had not satisfied his burden of proving ineffective assistance of counsel with regard to either of the failure to appear counts. The court further held that the petitioner had failed to satisfy his burden of proving that he is actually innocent regarding the failure to appear charges. The court, therefore, denied the petition for a writ of habeas corpus.

On appeal, the petitioner argues that the court improperly concluded that he received effective assistance of counsel. Specifically, the petitioner argues that counsel was ineffective in failing to file a motion to dismiss the 1989 failure to appear charge and in failing to notify him adequately and in a timely manner of the March 6, 2000 court date. We will address those claims in turn, but first we must address the standard of review pertaining to ineffective assistance of counsel claims.

"In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a viola-

---

[3] The second amended petition was filed, with the court's permission, subsequent to the habeas hearing.

[4] The petition did not challenge the conviction for sexual assault in the second degree or risk of injury to a child; it focused solely on the conviction of two counts of failure to appear in the first degree.

tion of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Citation omitted; internal quotation marks omitted.) *Henderson* v. *Commissioner of Correction*, 80 Conn. App. 499, 503, 835 A.2d 1036 (2003), cert. denied, 267 Conn. 918, 841 A.2d 1190 (2004).

"In *Strickland* v. *Washington*, [466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court adopted a two-part standard for evaluating claims of ineffective assistance of counsel during criminal proceedings: the [petitioner] must show: (1) that counsel's representation fell below an objective standard of reasonableness; id., 687–88; and (2) that defense counsel's deficient performance prejudiced the defense. Id., 694." (Internal quotation marks omitted.) *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 154, 662 A.2d 718 (1995). "A reviewing court need not address both components of the inquiry if the [petitioner] makes an insufficient showing on one." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 89 Conn. App. 134, 139, 871 A.2d 1103 (2005).

"The first part requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the [petitioner] by the Sixth Amendment. . . . In determining whether such a showing has been made, judicial scrutiny of counsel's performance must be highly deferential. . . . The reviewing court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.

"The second part requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . The

[petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Citations omitted; internal quotation marks omitted.) *Calabrese* v. *Commissioner of Correction*, 88 Conn. App. 144, 151, 868 A.2d 787, cert. denied, 273 Conn. 936, 875 A.2d 543 (2005).

I

We first address the petitioner's claim that his trial counsel, L. Kay Wilson, was ineffective in failing to file a motion to dismiss the first failure to appear charge on the ground that the statute of limitations had expired.[5] The petitioner argues, pursuant to *State* v. *Crawford*, 202 Conn. 443, 521 A.2d 1034 (1987), and *State* v. *Ali*, 233 Conn. 403, 660 A.2d 337 (1995), that an arrest warrant must be executed without unreasonable delay. In this case, the petitioner argues that the delay between the issuance of the warrant and service of it on him more than nine years later was unreasonable. The petitioner contends, therefore, that Wilson should have filed a motion to dismiss on the basis of the staleness of the warrant. We agree.

In *State* v. *Crawford*, supra, 202 Conn. 444–45, the defendant was charged with two misdemeanor offenses on the basis of an incident that occurred on June 5, 1983. An arrest warrant was issued for the defendant on July 22, 1983, but was not executed, and the defendant was not arrested until July 29, 1985, more than two years after the offenses were committed. Id., 445.

---

[5] Practice Book § 41-8 provides in relevant part: "The following defenses or objections, if capable of determination without a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the information . . .

"(3) Statute of limitations . . . ."

The defendant filed a motion to dismiss, claiming that because he had not been "prosecuted" within one year of the date of the offenses charged, as required by General Statutes § 54-193 (b), his prosecution was time barred. *State* v. *Crawford*, supra, 445. The trial court denied the defendant's motion to dismiss, and, following the defendant's conditional plea of nolo contendere, the defendant appealed from the denial of his motion. Id., 446. On appeal, the Supreme Court held that the issuance of the arrest warrant on July 22, 1983, within the period of limitation provided by § 54-193 (b) tolled the statute. Id., 447.

In so holding, the Supreme Court stated: "When an arrest warrant has been issued, and the prosecutorial official has promptly delivered it to a proper officer for service, he has done all he can under our existing law to initiate prosecution and to set in motion the machinery that will provide notice to the accused of the charges against him. When the prosecutorial authority has done everything possible within the period of limitation to evidence and effectuate an intent to prosecute, the statute of limitations is tolled. . . . An accused should not be rewarded, *absent evidence of a lack of due diligence on the part of the officer charged with executing the warrant*, for managing to avoid apprehension to a point in time beyond the period of limitation." (Citation omitted; emphasis added.) Id., 450.

The court further recognized "that some limit as to when an arrest warrant must be executed after its issuance is necessary in order to prevent the disadvantages to an accused attending stale prosecutions, a primary purpose of statutes of limitation." Id. The court, therefore, adopted the approach of the Model Penal Code and concluded that "in order to toll the statute of limitations, an arrest warrant, when issued within the time limitations of § 54-193 (b), must be executed without unreasonable delay. . . . We do not adopt a per se

approach as to what period of time to execute an arrest
warrant is reasonable. A reasonable period of time is
a question of fact that will depend on the circumstances
of each case. If the facts indicate that an accused con-
sciously eluded the authorities, or for other reasons
was difficult to apprehend, these factors will be consid-
ered in determining what time is reasonable. If, on the
other hand, the accused did not relocate or take evasive
action to avoid apprehension, failure to execute an
arrest warrant for even a short period of time might be
unreasonable and fail to toll the statute of limitations."
(Citation omitted.) Id., 450–51.

In affirming the denial of the defendant's motion to
dismiss in *Crawford*, the court further concluded that
the statute of limitations is an affirmative defense and
that the burden is on the defendant to prove the ele-
ments of that defense by a preponderance of the evi-
dence. Id., 451. Because no testimony was taken on the
defendant's motion to dismiss concerning the reason
for the delay in the execution of the warrant, he failed
to meet his burden, as neither the Supreme Court nor
the trial court could assume that the warrant was not
executed with due diligence. Id.

The habeas court, applying that case law, noted that
the petitioner had relocated several times following the
issuance of the failure to appear warrant and that those
changes of address were fatal to his claim that the
police did not use due diligence in attempting to execute
the warrant.[6] The court, therefore, concluded that the

---

[6] In support of that conclusion, the court stated: "[A]pproximately two
months following [the petitioner's] failure to appear which generated the
failure to appear warrant of March 15, 1989, he moved from Newington in
the judicial district of New Britain to Meriden (46 Preston Drive, Meriden)
in the judicial district of New Haven. He subsequently moved to Wallingford,
Connecticut (he was at 29A Wharton Brook Drive, Wallingford, on September
12, 1996, based upon his arrest record). He also lived at 76 South Turnpike
Road, Wallingford, and at 90 South Turnpike Road, Wallingford. . . . It was
certainly difficult to apprehend [the petitioner] when he had moved from
Newington to Meriden and then Wallingford. . . . Additionally, [the peti-

petitioner had not satisfied his burden of proving that there was an unreasonable delay in the execution of the warrant. Accordingly, the court held that Wilson was not ineffective in failing to file a motion to dismiss, as such motion would have been denied. We conclude, however, that the petitioner has satisfied both parts of the two part test enunciated in *Strickland* v. *Washington*, supra, 466 U.S. 687, for evaluating claims of ineffective assistance of counsel.

In reaching our conclusion, we look first to the testimony of the petitioner, who stated that he lived in Connecticut continuously from March, 1989, through September, 1998. The petitioner also stated that in the time between the issuance of the failure to appear warrant and his rearrest in this case, he was arrested fifteen times.[7] In 90 percent of those cases, he was taken to the police station and interviewed. On the occasions when he was arrested between 1989 and 1998, the petitioner provided his current address and operator's license to the police, who also had his current address. He thought that the outstanding warrant had been dropped because the police never brought it up.

Attorney Thomas E. Farver, the petitioner's expert witness, testified that the general practice would have been for an attorney to file a motion to dismiss the failure to appear count because of the delay in serving the arrest warrant for a period of nine years. When asked about the reasonableness of serving the warrant nine years later, Farver acknowledged that this is a judge's decision and further stated that "it certainly raises a red flag immediately when you have that longer period of time, and unless your client has been incarcerated somewhere else . . . it tends to be a rather

---

tioner] moved to Florida for several months and during that time was obviously out of the reach of the warrant for failure to appear."

[7] The petitioner's criminal arrest record was introduced into evidence and reflects numerous arrests during that time period.

lengthy time period, one that I think might well be entertained by a judge as to whether failure to serve during that time period was reasonable or not." Farver testified that the objective standard of reasonableness for a competent attorney in that situation would require the attorney to file a motion to dismiss and, if that is unsuccessful, to file a request to charge the jury on the matter.[8]

Wilson testified that she discussed the possibility of filing a motion to dismiss the failure to appear charge with "a few mentors and a few peers in the area" and that her associate did "a little bit of research on it." Wilson testified that she was concerned primarily with whether the underlying charges might have been stale. Although she was concerned primarily with the underlying charges, she still considered the failure to appear charge. She concluded that regardless of the time period that had passed, the charges, including the failure to appear charge, were still legitimate, and, therefore, a motion to dismiss would not have been viable. According to Wilson, although there was a delay in the execution of the warrant from 1989 until 1998, she did not believe that this made the arrest warrant stale.

We conclude, contrary to the habeas court, that by failing to file a motion to dismiss, "counsel's representation fell below an objective standard of reasonableness." *Strickland* v. *Washington*, supra, 466 U.S. 688. The evidence clearly established that the petitioner lived in Connecticut except for a brief period of time when he was in Florida shortly after the warrant was issued. We disagree with the conclusion of the court

---

[8] Farver also testified that the issue also could be raised in a motion for a judgment of acquittal, provided that a factual predicate for the argument has been established at trial. The court acknowledged that Wilson did make a motion for a judgment of acquittal, but the motion did not mention the staleness of the warrant as a basis for dismissal of the failure to appear charge.

that the petitioner was difficult to apprehend because he relocated from Newington to Meriden and then to Wallingford. That conclusion is contrary to the evidence because it overlooks the number of times that the petitioner was arrested in Connecticut and taken to the police station for questioning. On those occasions, the petitioner provided his current address and gave his current operator's license to the police.[9] Under those circumstances, we cannot say that the petitioner consciously tried to avoid apprehension. As the court stated in *State* v. *Crawford*, supra, 202 Conn. 451, "[i]f . . . the accused did not relocate or take evasive action to avoid apprehension, failure to execute an arrest warrant for even a short period of time might be unreasonable and fail to toll the statute of limitations." We also cannot say that the respondent commissioner of correction could show an "absen[ce] [of] evidence of a lack of due diligence on the part of the officer charged with executing the warrant . . . ." Id., 450. Under those circumstances, Wilson's representation fell below an objective standard of reasonableness when she did not file the appropriate motion to dismiss the 1989 failure to appear charge on the basis of the staleness of the arrest warrant.[10]

Turning to the second part of the *Strickland* test, we conclude that Wilson's failure to file the motion to

[9] According to the petitioner, the failure of the police to place the failure to appear warrant in the COLLECT system or National Crime Information Center (NCIC) system databases, along with the outstanding charges of sexual assault in the second degree and risk of injury to a child, reflects a lack of due diligence on the part of the police. With regard to whether the outstanding warrant needed to be entered into the NCIC or COLLECT databases, attorney Louis J. Luba, Jr, the prosecutor who handled the criminal case against the petitioner, testified that there is no statutory or case law that requires any arrest warrant or rearrest warrant to be entered into those systems.

[10] We further note that Wilson did not raise the statute of limitations as an affirmative defense to the failure to appear charge, nor did she present any evidence as to the lengthy delay between the issuance and execution of the warrant.

dismiss prejudiced the petitioner. Wilson chose not to file a motion to dismiss after concluding, on the basis of consultation with peers in the legal community, that the charges, including the first failure to appear charge, were still "live." Because Wilson did not file the appropriate motion to dismiss or in any other way raise the statute of limitations issue before the trial court or the jury as to the first failure to appear charge, the reasonableness of the delay in the execution of the warrant was not placed before the court. Although Wilson did file a motion for a judgment of acquittal, it was not based on the staleness of the warrant. We conclude, in accordance with the *Strickland* standard, that, but for Wilson's failure to file a motion to dismiss, the result of the proceeding would have been different. Had Wilson filed a motion to dismiss on the basis of the staleness of the warrant, there is a reasonable probability that the trial court would have dismissed that charge due to the delay between the issuance of the warrant and the execution of the warrant more than nine years later. The court, therefore, improperly denied the petition for a writ of habeas corpus with regard to the petitioner's conviction on the first count of failure to appear.

## II

We turn now to the second failure to appear count, which involved the petitioner's failure to appear in court in New Britain on March 6, 2000. With regard to that issue, the petitioner argued before the habeas court that Wilson was ineffective in her efforts to notify him of that court date. The court, relying primarily on the testimony of Wilson, held that the petitioner had not met his burden of proving that Wilson was ineffective in her representation of him with regard to her attempts to notify him of the March 6, 2000 trial date. The court further held that the petitioner had failed to meet his burden of proving, by clear and convincing evidence,

that he was actually innocent regarding the failure to appear charge. We agree with the court.

## A

## Ineffective Assistance of Counsel

According to the petitioner, Wilson's representation fell below the standard of a reasonable attorney practicing in the field of criminal law when she failed to notify him properly that he was required to be in court on March 6, 2000. We disagree.

At the habeas trial, the petitioner testified that Wilson never called to tell him of the March 6, 2000 court date, despite the fact that she had his home and cellular telephone numbers, as well as the cellular telephone numbers for his mother, Robin Ganley, his stepfather, William Ganley, his girlfriend, Courtney Holmes, and Holmes' mother, Darlene Holmes. The petitioner stated that he was in constant contact with those individuals and that he worked with his stepfather every day. Robin Ganley testified that prior to March 6, 2000, Wilson informed her that the petitioner was on one hour notice for trial in New Britain and that Wilson needed to be able to contact him. Robin Ganley testified that she gave Wilson her home and cellular telephone numbers and William Ganley's cellular telephone number. Robin Ganley also testified that the petitioner gave Wilson his cellular telephone number, and Courtney Holmes testified that she had given Wilson her telephone number.[11]

---

[11] According to Robin Ganley, she never received a message on her answering machine about the March 6, 2000 court date. After the petitioner failed to appear on March 6, 2000, she spoke to Wilson at the time that the petitioner was rearrested and brought to court. According to Robin Ganley, Wilson stated at that time that she did not call the petitioner about the March 6, 2000 trial date because he had left court during an unrelated matter in Manchester and the petitioner owed her money. The court expressly stated that it did not believe that Wilson made the statement attributed to her by Robin Ganley.

Wilson testified that during the time she represented the petitioner, she generally would communicate with him on the telephone, although she did send him some letters with regard to payment of her fee. On January 29, 2000, Wilson represented the petitioner in Manchester in a matter unrelated to the present case. On that date, after appearing in court in the morning, the parties were told to reappear in the afternoon. By the time the case was recalled in the afternoon, the petitioner was gone, and another failure to appear warrant was issued.[12] Prior to the petitioner's leaving on that day, Wilson and the petitioner had discussed all of his cases. Wilson knew that the New Britain matter would be coming up soon and advised the petitioner that he needed to be vigilant in keeping in contact with her.

Wilson testified that about one and one-half weeks prior to the March 6, 2000 court appearance in New Britain, she was informed by the clerk of court that the petitioner's case was going to be heard and that he would have to appear during the following week. She tried to call the petitioner using the telephone number she had for him, but the number was disconnected. She also left at least one message on Robin Ganley's answering machine asking that she contact her. She did not leave specific information on Robin Ganley's answering machine with regard to the March 6, 2000 court date; she did, however, indicate that the call was about the petitioner, that it was about a serious issue and that Wilson needed to contact him.[13]

On the basis of our review of the evidence presented at the habeas trial, we cannot conclude that Wilson's

---

[12] That failure to appear warrant is unrelated to the present appeal.

[13] Wilson testified that one of the reasons she did not leave a specific message about the March 6, 2000 court date on Robin Ganley's answering machine was because she was concerned about violating the attorney-client privilege. She also testified that there were times that the petitioner specifically told her not to discuss the case with his mother.

performance fell below an objective standard of reason-ableness with regard to her attempts to notify the peti-tioner of the March 6, 2000 court date. As stated previously, "[t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of the witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Henderson* v. *Commissioner of Correction*, supra, 80 Conn. App. 503. The court, as the sole arbiter of the credibility of witnesses, believed Wilson's testimony and found some of the petitioner's witnesses not credible.

Specifically, the court noted that the petitioner's behavior demonstrated a pattern of irresponsibility that reflected negatively on his credibility. In particular, the court noted that the petitioner admitted that he had six convictions for failure to appear and that with regard to one of the failure to appear warrants, he had fled from the police in Meriden in a high speed pursuit. The court further cited the explanation that the petitioner had given to his probation officer with regard to the 1989 failure to appear charge, which was that he "just missed it, that he forgot the court date, but that he didn't take it seriously because he knew he didn't commit the crime." Finally, the court cited the incident in Manches-ter when the petitioner left the courthouse without informing Wilson.

On the other hand, the court found that Wilson had testified with candor and truthfulness. Specifically, the court credited Wilson's testimony that when she and the petitioner were in court in Manchester, she told him that the New Britain case would be coming up soon and that it was important that he stay in contact with her. The court also credited Wilson's testimony that after she was unable to reach the petitioner using the telephone number that he had provided, she called and left two messages on Robin Ganley's answering machine, indicating that this was a serious matter and

that it was important that the petitioner contact her. Accepting Wilson's testimony as true, as the court did, we conclude that Wilson's efforts were reasonable with regard to her attempts to notify the petitioner of the March 6, 2000 court date. The court, therefore, properly found that the petitioner had been provided effective assistance of counsel.[14]

## B

## Actual Innocence

The petitioner also argues that the court improperly concluded that he was not actually innocent regarding the charge of failure to appear on March 6, 2000. We conclude, however, that the petitioner failed to establish, by clear and convincing evidence, that he was actually innocent regarding that charge.

In *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 700 A.2d 1108 (1997), our Supreme Court held that "the proper standard for evaluating a freestanding claim of actual innocence . . . is twofold. First, the petitioner must establish by clear and convincing evidence that, taking into account all of the evidence—both the evidence adduced at the original criminal trial and the evidence adduced at the habeas corpus trial—he is actually innocent of the crime of which he stands convicted. Second, the petitioner must also establish that, after considering all of that evidence and the inferences drawn therefrom as the habeas court did, no reasonable fact finder would find the petitioner guilty of the crime." Id., 747. The habeas court, applying that standard, concluded that the petitioner had failed to meet his burden of proving, by clear and convincing evidence, that he is actually innocent regarding the failure to appear charge and had failed to sustain his burden of proving that no

---

[14] Because the petitioner failed to show that Wilson's performance was deficient, we do not address the prejudice prong of *Strickland*. See *Smith* v. *Commissioner*, supra, 89 Conn. App. 139.

reasonable fact finder could find him guilty of the crime of failure to appear. We agree with that conclusion.

General Statutes § 53a-172 (a) provides in relevant part: "A person is guilty of failure to appear in the first degree when . . . while charged with the commission of a felony and while out on bail or released under other procedure of law, he wilfully fails to appear when legally called according to the terms of his bail bond or promise to appear . . . ." "[I]n order to prove the wilful element of [the offense of failure to appear in the first degree in violation of] General Statutes § 53a-172, the state must prove beyond a reasonable doubt either that the defendant received and deliberately ignored a notice to appear or that he intentionally embarked on a course of conduct designed to prevent him from receiving such notice." (Internal quotation marks omitted.) *State* v. *Cassidy*, 236 Conn. 112, 135, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996), overruled in part on other grounds, *State* v. *Alexander*, 254 Conn. 290, 296, 755 A.2d 868 (2000).

The petitioner argues in his brief that "as a matter of law, [he] should not have been arrested for failure to appear since he had no notice and did not deliberately embark upon a course of conduct to avoid notice." The petitioner argues, as he did in support of his claim of ineffective assistance of counsel, that Wilson failed to leave a message with his mother, Robin Ganley, and his stepfather, William Ganley, nor did she send him a letter with regard to the March 6, 2000 court date, as she had done on prior occasions.

As stated previously, the court credited Wilson's testimony, yet found the petitioner and his witnesses not credible. In particular, the court believed Wilson's testimony that, while in Manchester, she emphasized how important it was that the petitioner stay in contact with

her regarding the upcoming case in New Britain and that after trying unsuccessfully to reach the petitioner using the telephone number that he had provided, she left two messages on Robin Ganley's answering machine indicating that it was a serious matter and that it was important that the petitioner contact her. The petitioner, however, did not maintain contact with Wilson. Because the petitioner engaged in conduct that prevented him from receiving notice of the court date, the court properly concluded that he had not proven, by clear and convincing evidence, that he was actually innocent regarding his conviction on the second count of failure to appear and that no reasonable fact finder would find him guilty.

The judgment is reversed only as it relates to the first count of failure to appear and the case is remanded with direction to render judgment granting the petition for a writ of habeas corpus and ordering further proceedings according to law on the first count of failure to appear. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.