# GILBERTO GONZALEZ *v.* COMMISSIONER OF CORRECTION
## (AC 30361)

Harper, Beach and Robinson, Js.

Argued January 15—officially released June 29, 2010

*Andrew S. Knott,* special public defender, for the appellant (petitioner).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich*, state's attorney, and *Angela R. Macchiarulo*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

HARPER, J. The petitioner, Gilberto Gonzalez, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The petitioner claims that the court improperly rejected his claim that his trial counsel was ineffective in that he failed to challenge the validity of an arrest warrant. We affirm the judgment of the habeas court.

The following facts and procedural history underlie the petitioner's appeal. The petitioner was charged with two counts of sexual assault in the first degree in violation of General Statutes (Rev. to 1993) § 53a-70 (a) (2) and two counts of risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21. A jury found the petitioner guilty of these crimes, and the trial court rendered judgment in accordance with the jury's verdict, imposing a total effective sentence of sixty years imprisonment, execution suspended after forty years, and ten years probation. As set forth in a prior opinion of this court, the jury reasonably could have found the following facts: "The victim[1] was born in 1985. In 1993 and 1994, the victim lived with her mother, the victim's two half-sisters and the [petitioner]. The [petitioner] and the victim's mother had lived together from the time that the victim was two years old.

"The victim testified that the [petitioner] sexually assaulted her at least four times a week during 1993 and 1994. Those assaults occurred in the family home

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

while the victim's mother was either absent from the apartment or while she was in another part of the apartment sleeping. The victim testified that she did not cry out or otherwise attempt to tell her mother about the assaults because the [petitioner] had threatened her. One of the victim's half-sisters witnessed the assaults on the victim on several occasions. The [petitioner] unsuccessfully attempted to coerce the half-sister into participating in those acts.

"The half-sister eventually disclosed the [petitioner's] abuse of the victim to a friend at school. That friend, in turn, told the school social worker about the sexual assaults. On March 24, 1994, the social worker spoke with the victim about the assaults. The victim testified that although her half-sister had encouraged her to confide in the school social worker, she initially had lied to the social worker and denied that the [petitioner] had assaulted her. At trial, the victim stated that she had denied that those assaults had occurred because she was afraid of the [petitioner]. The victim eventually did tell the school social worker that the [petitioner] had assaulted her. The victim also was interviewed by an intake worker for the department of children and families (department) and a sexual assault crisis counselor. During those interviews, the victim confirmed the allegations of abuse.

"Following those interviews, the victim and her half-sister confronted the [petitioner] and the victim's mother with the allegations of abuse during a meeting at the department's offices. After that meeting, the department took the children into its custody. Three days later, the [petitioner] fled to Puerto Rico. On March 2, 2000, a fugitive task force arrested the [petitioner] in Puerto Rico. He was extradited to Connecticut on March 22, 2000.

"On April 5, 1994, a physician examined the victim on the department's referral. Although his examination

did not establish conclusively that the victim had been sexually assaulted, the physical evidence was sufficient for the physician, to form 'a very high degree of suspicion' that the victim had been exposed to some form of sexual contact." *State* v. *Gonzalez*, 75 Conn. App. 364, 366–68, 815 A.2d 1261 (2003), rev'd, 272 Conn. 515, 864 A.2d 847 (2005).

Following the petitioner's direct appeal, this court reversed the trial court's judgment and remanded the case for a new trial. *State* v. *Gonzalez*, supra, 75 Conn. App. 386. Following its grant of certification to appeal; *State* v. *Gonzalez*, 263 Conn. 913, 822 A.2d 242 (2003); our Supreme Court reversed this court's judgment and remanded the case to this court with direction to affirm the trial court's judgment. *State* v. *Gonzalez*, 272 Conn. 515, 545, 864 A.2d 847 (2005).

In 2005, the petitioner, appearing pro se, filed a petition for a writ of habeas corpus. In April, 2008, the petitioner, represented by counsel, filed an amended petition for a writ of habeas corpus. In his amended petition, the petitioner alleged that his confinement was illegal because he had been deprived of his right to the effective assistance of trial counsel, guaranteed by the federal and state constitutions. With regard to the claim raised on appeal, the petitioner alleged that his trial counsel, Matthew Davis, was ineffective in that "[he] failed to file a [m]otion to [d]ismiss pursuant to . . . General Statutes § 54-193[a], based upon a stale arrest warrant."[2] The respondent, the commissioner of correction, denied the petitioner's claim that he had received ineffective assistance of trial counsel.

The basis of the petitioner's claim was that although a warrant for his arrest had been issued within the

---

[2] In support of his petition, the petitioner relied on five other claimed acts and omissions by Davis during the trial process. The court rejected those aspects of the petitioner's ineffectiveness claim, and those grounds and the court's resolution of those grounds are not relevant to the claim before us.

relevant statute of limitations,[3] the warrant had not been executed thereafter within a reasonable period of time. The claim was that his prosecution did not commence within the statute of limitations and that Davis should have filed a motion to dismiss based on the applicable statute of limitations. The petitioner asserted that he neither took evasive action nor was difficult to apprehend after the issuance of the warrant. The petitioner argued that Davis failed to raise a "valid affirmative defense appropriate for a [m]otion to [d]ismiss" and that, had Davis raised the issue at trial, "the outcome of the trial would have been different in that there would not have been a trial . . . ."

The court held an evidentiary hearing related to the petition. By memorandum of decision filed June 19, 2008, the court denied the petition. The court found that the petitioner's arrest warrant issued on April 5, 1994, and the petitioner's arrest occurred on March 2, 2000. The court noted that the applicable statute of limitations provides in relevant part that "no person may be prosecuted for any offense . . . involving sexual abuse, sexual exploitation or sexual assault of a minor except within thirty years from the date the victim attains the age of majority or within five years from the date the victim notifies any police officer or state's attorney acting in such police officer's or state's attorney's official capacity of the commission of the offense, whichever is earlier . . . ." General Statutes § 54-193a. The court was guided by the analysis in *State* v. *Crawford*, 202 Conn. 443, 447–50, 521 A.2d 1034 (1987), in which our Supreme Court applied the similarly worded statute of limitations codified in General Statutes § 54-193 (b).[4] The court observed that in *Crawford*, our

___

[3] As the habeas court noted, before that court the petitioner incorrectly referred to General Statutes § 54-193 as the applicable statute of limitations. In his appellate brief, the petitioner acknowledges that the applicable statute of limitations is codified in General Statutes § 54-193a.

[4] General Statutes § 54-193 (b) provides in relevant part: "No person may be prosecuted for any offense . . . for which the punishment is or may be

Supreme Court "held that the issuance of an arrest warrant constitutes 'prosecution' within the meaning of § 54-193 (b), thus tolling the limitations period." The court then cited the following language from *Crawford*: "[S]ome limit as to when an arrest warrant must be executed after its issuance is necessary in order to prevent the disadvantages to an accused attending stale prosecutions, a primary purpose of statutes of limitation. . . . Therefore, we adopt, what we think is the sensible approach of the model penal code, and conclude that, in order to toll the statute of limitations, an arrest warrant, when issued within the time limitations of § 54-193 (b), must be executed without unreasonable delay. . . . We do not adopt a per se approach as to what period of time to execute an arrest warrant is reasonable. A reasonable period of time is a question of fact that will depend on the circumstances of each case. If the facts indicate that an accused consciously eluded the authorities, or for other reasons was difficult to apprehend, these factors will be considered in determining what time is reasonable. If, on the other hand, the accused did not relocate or take evasive action to avoid apprehension, failure to execute an arrest warrant for even a short period of time might be unreasonable and fail to toll the statute of limitations." (Citations omitted.) *State* v. *Crawford*, supra, 450–51. Noting similarities in the language of §§ 54-193a and 54-193 (b), the court deemed it reasonable to apply *Crawford*'s "unreasonable delay" test to the present case.

The court stated: "The petitioner argues that he was not difficult to apprehend and did not actively attempt to 'elude' authorities. The petitioner claims that his

imprisonment in excess of one year, except within five years next after the offense has been committed. No person may be prosecuted for any other offense . . . except within one year next after the offense has been committed."

address in Puerto Rico was available through family members or through state agencies, including the support enforcement division and [the] unemployment compensation division. At trial, Sergeant John Wackerman of the Willimantic police department testified that he was unable to locate the [petitioner] after interviewing the victim and obtaining an arrest warrant because he 'had fled to Puerto Rico' on March 27, 1994, three days after being initially confronted by [the department]. He did not locate the [petitioner] until March 2, 2000, when the [petitioner] was arrested by the fugitive task force of the United States Marshals [Service]. Sergeant Wackerman testified that he had attempted, unsuccessfully, to find out from the family specifically where he was living in Puerto Rico but had not checked with the support enforcement or unemployment compensation divisions of Connecticut. Officer Robert Rosado testified that, when he interviewed the petitioner after [he was] returned to the United States, the petitioner changed his story several times as to why he left for Puerto Rico and why he did not leave an address with the police. [M], the mother of the victims, found out soon after the petitioner left that he was [in Puerto Rico], and went to the police with this information shortly after she, herself, returned from Puerto Rico. She informed Officer Wackerman that he was somewhere in Puerto Rico but could not remember exactly when this [conversation] occurred, stating only that it was in 1995. There is no evidence that the police knew that they could obtain the petitioner's address from the state agencies.

"It is not entirely clear why it took until 2000 for the [petitioner] to be located; however, this court is not convinced that the efforts to do so were not diligently undertaken. Relocation to Puerto Rico is a far cry from simply moving around towns within Connecticut . . . or to a readily available address in New York . . . and

renders a person substantially more difficult to locate and [to] apprehend. While the trial transcript reveals that the authorities may have been aware [that] the petitioner was in Puerto Rico as early as 1995, there is no indication that they knew his exact address or how to directly contact him. The burden of proving unreasonable delay is on the petitioner . . . and he has not met his burden. . . . Therefore, this court cannot say that, but for counsel's actions, the petitioner would probably have succeeded on a motion to dismiss, and he has failed to establish prejudice under [*Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]."

After the court denied the petition for a writ of habeas corpus, the petitioner filed a petition for certification to appeal to this court. The court granted the petition, limited to the claim analyzed previously. This appeal followed.

Relying solely on the federal constitution's guarantee of effective representation, the petitioner argues that he was deprived of effective assistance in that Davis "fail[ed] to challenge the validity of the arrest warrant" by means of a motion to dismiss. In substance, the petitioner advances the same arguments that he did at his habeas trial, asserting that there was an unreasonable delay or lack of due diligence in the execution of the arrest warrant.[5] The petitioner states: "The claim of the petitioner is that, while the statute of limitations was satisfied by the police when they obtained the

---

[5] We recognize that the claim raised before and addressed by the habeas court was whether Davis improperly failed to bring a motion to dismiss based on the applicable statute of limitations. Before this court, the petitioner focuses solely on Davis' failure to challenge the validity of the warrant based on the delay in its execution. The habeas court addressed the issue of delay in the execution of the warrant, as that issue was integral to the claim raised in the habeas court. Thus, despite the apparent change in emphasis in the petitioner's claim, we do not consider it to be materially distinct from the claim raised before the habeas court.

warrant, the arrest warrant was stale and thus null and void. This issue of the warrant's legal effect is an issue for the court to decide in a motion to dismiss." The respondent argues that the court properly concluded that a motion to dismiss would have been meritless and that the court properly concluded that the petitioner could not establish that Davis' conduct caused him any prejudice.

We begin our analysis by setting forth the principles that guide our review of the court's decision. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review. . . .

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in *Strickland* v. *Washington*, [supra, 466 U.S. 687], this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, [the petitioner] must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied. . . . [A] reviewing

court can find against a petitioner on either ground, whichever is easier." (Citation omitted; internal quotation marks omitted.) *Fernandez* v. *Commissioner of Correction*, 291 Conn. 830, 834–35, 970 A.2d 721 (2009).

At the hearing on the habeas petition, Davis testified that for tactical reasons, he did not file a motion to dismiss the case based on the validity of the warrant. As stated previously, the court concluded that the petitioner was unable to demonstrate prejudice because he did not demonstrate that it was likely that he would have prevailed on a motion to dismiss. The court properly focused on the delay by law enforcement in executing the warrant. Like the habeas court, we focus on *Strickland*'s prejudice prong and conclude that the petitioner has not demonstrated that he likely would have prevailed on a motion to dismiss based on the delay in the execution of the warrant.

Several appellate decisions shed light on the issue before us. In *Crawford*, our Supreme Court laid the framework for analyzing claims involving a delay in the execution of a warrant. The court emphasized: "We do not adopt a per se approach as to what period of time to execute an arrest warrant is reasonable. A reasonable period of time is a question of fact that will depend on the circumstances of each case. If the facts indicate that an accused consciously eluded the authorities, or for other reasons was difficult to apprehend, these factors will be considered in determining what time is reasonable. If, on the other hand, the accused did not relocate or take evasive action to avoid apprehension, failure to execute an arrest warrant for even a short period of time might be unreasonable . . . ." *State* v. *Crawford*, supra, 202 Conn. 451. The defendant in *Crawford* challenged the trial court's denial of his motion to dismiss, but the Supreme Court rejected the defendant's claim, noting that he had not attempted to satisfy his burden of demonstrating that there had been

an unreasonable delay in the execution of the warrant. Id. The court stated that "[w]e cannot assume, nor could the trial court, that the warrant was not executed with due diligence. . . . There was no evidence to the contrary." (Citation omitted.) Id.

Our Supreme Court followed *Crawford*'s analysis in *State* v. *Ali*, 233 Conn. 403, 416, 660 A.2d 337 (1995), when it held that a defendant had presented evidence sufficient to warrant an instruction with respect to his affirmative defense related to the statute of limitations. In *Ali*, there was evidence that during a delay between the issuance and execution of a warrant, the police knew the defendant's address, the defendant had contact with his children and he sent checks to his children. Id. The court reasoned that it would have been reasonable for a jury to conclude, on these facts, that the police could have effectuated the defendant's arrest sooner, and, thus, "the issue of whether the state executed the warrant within a reasonable period of time was properly a question of fact for the jury." Id.

In *Thompson* v. *Commissioner of Correction*, 91 Conn. App. 205, 210–16, 880 A.2d 965 (2005), appeal dismissed, 280 Conn. 509, 909 A.2d 946 (2006), this court concluded that the petitioner had demonstrated that his trial counsel had rendered ineffective assistance by failing to file a motion to dismiss a charge on the ground that the offense at issue had not been prosecuted within the statute of limitations. Similar to the present case, the claim centered on a delay in the execution of a warrant; more than nine years had passed between the time the warrant was issued and the time it was executed. Id., 210. This court stated: "We disagree with the conclusion of the [trial] court that the petitioner was difficult to apprehend because he relocated from Newington to Meriden and then to Wallingford. That conclusion is contrary to the evidence because it overlooks the number of times that the petitioner was arrested

in Connecticut and taken to the police station for questioning. On those occasions, the petitioner provided his current address and gave his current operator's license to the police. Under those circumstances, we cannot say that the petitioner consciously tried to avoid apprehension. . . . We also cannot say that the respondent commissioner of correction could show an absen[ce] [of] evidence of a lack of due diligence on the part of the officer charged with executing the warrant . . . ." (Citation omitted; internal quotation marks omitted.) Id., 214–15. This court, in *Thompson*, concluded that the petitioner's trial counsel acted in a deficient manner by failing to raise the statute of limitations issue before the trial court and concluded that the deficient performance was harmful because "there is a reasonable probability that the trial court would have dismissed that charge due to the delay between the issuance of the warrant and the execution of the warrant more than nine years later." Id., 216.

The defendant in *State* v. *Soldi*, 92 Conn. App. 849, 887 A.2d 436 (2005), cert. denied, 277 Conn. 913, 895 A.2d 792 (2006), challenged the trial court's denial of her motion to dismiss in which she claimed, in part, that the prosecution of her violation of probation charge was untimely, as the warrant for the violation had not been executed with due diligence. The warrant was executed more than five years after it had been issued. Id., 851. At a hearing on the motion, the defendant presented evidence that the police readily could have executed the warrant after it had been issued. Id., 853. In denying the motion to dismiss, the trial court in *Soldi* reasoned that the defendant had failed to present evidence that the police had acted with unreasonable delay or with a lack of due diligence in executing the warrant. The trial court stated: "Without evidence to the contrary, this court cannot assume that the warrant was executed with unreasonable delay or lack of due

diligence." (Internal quotation marks omitted.) Id., 854. This court disagreed with the trial court's analysis, stating: "[O]nce the defendant put forth evidence that she did not attempt to elude arrest, she was living in West Haven for all but two months during that five year period, her daughter attended West Haven schools, utilities for her residences were in her name, a vehicle was registered at her address, her driver's license had her address on it and her probation officer testified that he knew of those addresses, the burden should have shifted to the state to prove that due diligence was exercised despite failing to serve the warrant for more than five years." Id. After concluding that the state failed to demonstrate the reasonableness of the delay, this court reversed the judgment of the trial court denying the defendant's motion to dismiss. Id., 860.

At the hearing on the habeas petition, the petitioner did not dispute that he had left Connecticut for Puerto Rico three days after the sexual abuse allegations came to light. The petitioner testified that he did not reside in Puerto Rico in an attempt to avoid the authorities and that family members in Connecticut, whom he did not specify, knew his whereabouts after he had left the state. The petitioner testified that several state agencies, including the support enforcement division and the department of labor, had his information on file during the time that he was living in Puerto Rico.

The court had before it transcripts from the petitioner's underlying criminal trial. The court noted Wackerman's trial testimony that when he attempted to interview the petitioner at his residence, he could not locate the petitioner and was told only that he was in Puerto Rico. Wackerman testified that the petitioner had "fled to Puerto Rico" three days after the department had advised him of the victim's allegations. Wackerman testified that he had tried to determine the petitioner's whereabouts from his family members but

that he did not contact the support enforcement division or the unemployment compensation division in attempt to locate the petitioner. Further, Wackerman testified that the petitioner was arrested in Puerto Rico by the United States Marshals Service's fugitive task force after Wackerman had learned of the petitioner's address in Puerto Rico and provided it to the task force.

Also, the court noted Rosado's trial testimony that he had interviewed the petitioner following his apprehension. As the court observed, Rosado testified that the petitioner had changed his story several times concerning the reason why he left Connecticut for Puerto Rico. Rosado testified that the petitioner stated that prior to the time he had been contacted by the department concerning the allegations of abuse, he had plans to relocate to Puerto Rico. Later, the petitioner stated that it was his wife's idea to move to Puerto Rico. When Rosado asked the petitioner why he had not left his contact information with the police, the petitioner blamed his wife. Additionally, Rosado testified that the petitioner had wanted to return to the United States, but "his wife wouldn't let him come back to the United States because she felt he would be imprisoned for his actions, sexually assaulting her daughters."

The court also noted the trial testimony of M, the victim's mother. M testified that the petitioner "left" when the allegations of abuse surfaced. When asked where the petitioner went, M testified: "If he went to Puerto Rico, I don't know, because I didn't go with him." M testified that later, she had learned that the petitioner was in Puerto Rico and that she had traveled to Puerto Rico, where she spoke with him. M recalled that prior to that time, she met with employees of the department concerning the abuse allegations. She stated that at that time, she did not know what to believe concerning the allegations. M testified that following that meeting, the petitioner told her that "he was leaving

because he wasn't going to go to jail being innocent." M testified that after she returned from Puerto Rico, in 1995, she notified the police that he was in Puerto Rico so that they could bring the petitioner back to Connecticut to answer the charges.

The petitioner does not dispute any of the court's factual findings, and the court's factual findings were consistent with the evidence presented. The issue is whether the petitioner satisfied his burden of demonstrating that the warrant was not executed within a reasonable period of time. The court found, on the basis of all of the evidence, that the petitioner had made himself difficult to locate and to apprehend and that he had not left the police with any ready means to contact him. The evidence was uncontroverted that the petitioner left Connecticut for Puerto Rico within days of learning of the victim's allegations of sexual abuse. The evidence also demonstrated that the petitioner relocated to Puerto Rico, a self-governing, unincorporated territory of the United States, until the time of his apprehension. The petitioner admitted that he did not leave any contact information with the police, and family members did not provide such contact information to the police. Although the petitioner denied consciously eluding the authorities, there was ample evidence to the contrary. In light of the petitioner's relocation from Connecticut to Puerto Rico and the fact that there was no evidence that the police knew of his Puerto Rico address, we cannot conclude that the petitioner satisfied his burden of demonstrating that there was an unreasonable delay in the execution of the warrant. The timing of the petitioner's relocation and the fact that he did not relocate to another town or even another state, but to Puerto Rico, is compelling. This is not a case in which evidence was presented that the petitioner had not acted in an elusive manner or that he

was readily accessible to the police.[6] Cf. *State* v. *Soldi*, supra, 92 Conn. App. 857. Thus, we do not conclude that the burden of proof shifted to the state to demonstrate that it had not acted unreasonably in executing the warrant. Under these circumstances, we conclude that it was unlikely that if Davis had filed a motion to dismiss based on a delay in the execution of the petitioner's arrest warrant, the petitioner would have prevailed on the motion. Accordingly, we conclude that the court properly concluded that the petitioner was unable to satisfy *Strickland*'s second prong and properly denied the petition for a writ of habeas corpus on that ground.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] The petitioner places much emphasis on his testimony that state agencies, specifically the support enforcement division and the department of labor, had information concerning his whereabouts in Puerto Rico and that, upon his apprehension in Puerto Rico, he had waived extradition to Connecticut. We are not persuaded that the petitioner's conduct following his apprehension is relevant to our consideration of whether he was easy to apprehend. Additionally, there was no evidence that the police were aware of the petitioner's whereabouts in Puerto Rico or that they were aware that state agencies, which plainly are unrelated to law enforcement or the victim's allegations, had such information. Thus, we are not persuaded that the petitioner's purported contacts with these state agencies demonstrated that he had not acted elusively or that his whereabouts were readily ascertainable by the police. We may speculate that, with the luxury of unlimited resources, there are ways to ascertain the location of most persons. Our analysis is not affected by the petitioner's hypothesis that there was a method by which the police might have located him but by whether the petitioner had eluded authorities or made himself difficult to apprehend.