******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROGER B.* *v.* COMMISSIONER
OF CORRECTION
(AC 36149)

Beach, Alvord and Bishop, Js.

*Argued January 13—officially released May 12, 2015*

(Appeal from Superior Court, judicial district of
Tolland, Cobb, J.)

*Deren Manasevit*, assigned counsel, for the appellant (petitioner).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *David Shepack*, state's attorney, and *Brenda L. Hans*, assistant state's attorney, for the appellee (respondent).

*Opinion*

ALVORD, J. The petitioner, Roger B., appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) abused its discretion in denying his petition for certification to appeal, (2) improperly rejected his claim that his trial counsel was ineffective in that he failed to raise a statute of limitations affirmative defense, and (3) improperly rejected his claim that his trial counsel was ineffective in that he failed to consult and present an expert. We agree with the petitioner's first and second claims and, accordingly, reverse in part the judgment of the habeas court.

The following facts and procedural history underlie the petitioner's appeal. The petitioner was convicted after a jury trial of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A), and three counts of risk of injury to a child in violation of General Statutes § 53-21 (2). The petitioner was sentenced to a total effective term of twenty-nine years incarceration, execution suspended after twenty-three years, with thirty years of probation. The petitioner appealed from the judgment of conviction.

Our Supreme Court, in affirming the conviction, concluded that the jury reasonably could have found the following facts: "In 1995, the [petitioner] lived with his girlfriend, J.T., and her three children; two girls, S and J, and one boy, K. S was eight years old and J was four years old.[1] There were two bedrooms on the first floor of the house. S and J shared a bedroom, as did the [petitioner], J.T. and K. The living room and kitchen were located on the second floor. Almost nightly, the [petitioner] would wake up S and take her upstairs to the living room, where he would sexually assault her.[2]

"In May, 1996, the [petitioner], J.T. and her children and the [petitioner's] mother moved to a new house. The kitchen, living room and S's bedroom were on the first floor of the house. There were three bedrooms on the second floor. The [petitioner] and J.T. shared one bedroom, and J and K shared another. The [petitioner's] mother also slept on the second floor. In the new house, the [petitioner] would wake up J and take her to the living room or to his bedroom and sexually assault her.[3]

"In the fall of 1999, J.T. entered a psychiatric ward. S, J and K lived with the [petitioner], who was their sole caretaker[4] until representatives from the department of children and families (department) removed the children because the [petitioner] was not a relative. In February, 2000, the department placed J in a foster home. The department subsequently placed S in the same fos-

ter home. A few months after living in the foster home, S told her boyfriend that she had been abused by the [petitioner]. S later told her foster mother and her therapist that the [petitioner] had abused her. When J also told her foster mother that the [petitioner] had abused her, the foster mother reported the allegations to the department." *State* v. *Roger B.*, 297 Conn. 607, 609–10, 999 A.2d 752 (2010). Additional facts will be set forth as necessary.

On August 21, 2008, the petitioner filed his initial petition for a writ of habeas corpus. The petitioner filed an amended petition on August 25, 2011. In his amended petition, the petitioner alleged that his trial counsel, Christopher Cosgrove, had rendered ineffective assistance in numerous ways. Relevant to this appeal are the petitioner's allegations that his trial counsel had rendered ineffective assistance in failing to (1) raise a statute of limitations affirmative defense, and (2) consult and retain an expert to review the protocol used in forensic interviews conducted with the two victims. The court held an evidentiary hearing on the petition. In a memorandum of decision filed August 16, 2013, the court denied the petitioner's amended petition. After the court denied the petition for a writ of habeas corpus, the petitioner filed a petition for certification to appeal to this court, which was denied on August 28, 2013. On September 30, 2013, the petitioner filed the present appeal.[5]

On appeal, the petitioner claims that the habeas court improperly concluded that he received effective assistance of counsel. We first set forth our standard of review. "Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. . . . A petitioner may establish an abuse of discretion by demonstrating that the issues are debatable among jurists of reason . . . [the] court *could* resolve the issues [in a different manner] . . . or . . . the questions are adequate to deserve encouragement to proceed further. . . . The required determination may be made on the basis of the record before the habeas court and the applicable legal principles." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 564, 941 A.2d 248 (2008).

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by this court for

determining the propriety of the habeas court's denial of the petition for certification. Absent such a showing by the petitioner, the judgment of the habeas court must be affirmed. . . .

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Citation omitted; internal quotation marks omitted.) *Holloway* v. *Commissioner of Correction*, 145 Conn. App. 353, 363–64, 77 A.3d 777 (2013).

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, [the petitioner] must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied. . . . [A] reviewing court can find against a petitioner on either ground, whichever is easier." (Internal quotation marks omitted.) *Gonzalez* v. *Commissioner of Correction*, 122 Conn. App. 271, 279–80, 999 A.2d 781, cert. denied, 298 Conn. 913, 4 A.3d 831 (2010).

In order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal, we must consider the merits of the petitioner's underlying claims that his trial counsel provided ineffective assistance. With the foregoing principles in mind, we turn to the petitioner's claims.

I

The petitioner first claims that his trial counsel's failure to assert a statute of limitations affirmative defense constituted ineffective assistance of counsel. The petitioner argues, pursuant to *State* v. *Crawford*, 202 Conn. 443, 521 A.2d 1034 (1987), and *State* v. *Ali*, 233 Conn.

403, 660 A.2d 337 (1995), that the issuance of the warrant for his arrest did not toll the statute of limitations because the warrant was not executed without unreasonable delay. The basis for the petitioner's claim is that although the warrant had been issued on July 6, 2005, within the applicable statute of limitations, the warrant was not executed until January 24, 2007, beyond the five year period established by General Statutes § 54-193a, entitled "Limitation of prosecution for offenses involving sexual abuse of minor."[6] The petitioner asserts that his trial counsel's failure to assert this affirmative defense rendered counsel's performance deficient. He claims that had his trial counsel asserted the defense, the outcome of the proceedings would have been different and argues that "a defendant suffers prejudice when defense counsel fails to assert a meritorious statute of limitations defense that could put an end to the prosecution."

The following additional facts as found by the habeas court are relevant to the petitioner's claim. The offenses of which the petitioner was convicted were committed over a period of time from 1995 to 2000. The department reported the allegations of sexual abuse to the New Milford Police Department on July 7, 2000. On July 17, 2000, New Milford Police Department Detective James Mullin watched a forensic interview conducted with the victims. Mullin obtained a statement from the petitioner on August 31, 2000. The petitioner gave police permission to conduct a search of his apartment and storage unit. The investigation was completed in 2000, and police did not discover any additional evidence between 2000 and 2005. On July 6, 2005, police obtained an arrest warrant for the petitioner. The petitioner had left Connecticut several months after he gave his statement to police. The petitioner had addresses in Indiana and eventually relocated to Alabama. United States marshals located the petitioner in Alabama in November, 2006, at which time the state's attorney authorized his extradition from Alabama. The petitioner was transported to New York, and Mullin executed the arrest warrant on January 24, 2007.

A statute of limitations affirmative defense on the basis of unreasonable delay in execution of the warrant is properly considered according to the framework set forth in *Crawford* and articulated in subsequent appellate decisions. In *State* v. *Crawford*, supra, 202 Conn. 450, our Supreme Court stated: "When an arrest warrant has been issued, and the prosecutorial official has promptly delivered it to a proper officer for service, he has done all he can under our existing law to initiate prosecution and to set in motion the machinery that will provide notice to the accused of the charges against him. When the prosecutorial authority has done everything possible within the period of limitation to evidence and effectuate an intent to prosecute, the statute of limitations is tolled. . . . An accused should not be

rewarded, absent evidence of a lack of due diligence on the part of the officer charged with executing the warrant, for managing to avoid apprehension to a point in time beyond the period of limitation.

"We recognize, however, that some limit as to when an arrest warrant must be executed after its issuance is necessary in order to prevent the disadvantages to an accused attending stale prosecutions, a primary purpose of statutes of limitations. . . . Therefore, we adopt, what we think is the sensible approach of the model penal code, and conclude that, in order to toll the statute of limitations, an arrest warrant, when issued within the time limitations of § 54-193 (b)[7], must be executed without unreasonable delay[8]. . . . We do not adopt a per se approach as to what period of time to execute an arrest warrant is reasonable. A reasonable period of time is a question of fact that will depend on the circumstances of each case. If the facts indicate that an accused consciously eluded the authorities, or for other reasons was difficult to apprehend, these factors will be considered in determining what time is reasonable. If, on the other hand, the accused did not relocate or take evasive action to avoid apprehension, failure to execute an arrest warrant for even a short period of time might be unreasonable and fail to toll the statute of limitations." (Citations omitted; footnotes altered.) Id., 450–51. In *State* v. *Ali*, supra, 233 Conn. 416, our Supreme Court further noted that "the issuance of an arrest warrant is sufficient 'prosecution' to satisfy the statute of limitations only if the warrant is executed with due diligence."[9]

"A statute of limitations claim is an affirmative defense for which the burden rests with the defendant to prove the elements of the defense by a preponderance of the evidence. . . . Despite this, once a defendant puts forth evidence to suggest that [he] was not elusive, was available and was readily approachable, the burden shifts to the state to prove that the delay in executing the warrant was not unreasonable." (Citations omitted; internal quotation marks omitted.) *State* v. *Woodtke*, 130 Conn. App. 734, 740, 25 A.3d 699 (2011); see also *State* v. *Derks*, 155 Conn. App. 87, 93,     A.3d    , cert. denied, 315 Conn. 930,     A.3d     (2015).

The petitioner raised his claim that trial counsel was ineffective in failing to raise a statute of limitations affirmative defense before the habeas court in his petition, in his briefs to the court, and through testimony and other evidence at trial. In his pretrial brief, the respondent, the Commissioner of Correction, countered that "[t]here is no viable statute of limitations defense because the arrest warrant was issued within the five year period from the victims' reporting it to authorities." In his posttrial brief, the respondent argued that the petitioner's moves to Indiana and Alabama had made it difficult to apprehend him, and thus

he would not have prevailed on a statute of limitations affirmative defense. Accordingly, our review of the record leads us to conclude that the petitioner adequately raised his claim in the habeas court.

We next examine the habeas court's resolution of the petitioner's claim. In a section of the habeas court's memorandum of decision titled "Arrest Warrant Delays," the habeas court found that "the petitioner has failed to provide any credible evidence to establish that he was prejudiced at trial by his counsel's failure to challenge the warrant as stale or the delay in executing it." The court further concluded that the "[p]etitioner's trial counsel definitively and credibly testified that [the] petitioner's defense was not hindered in any way by the delays, and the petitioner has not provided this court with any credible evidence to dispute this assertion." It noted that trial counsel had determined that the defense was not hindered by the delays because "no new information arose during the period, no witnesses went missing, and the witnesses were able to recall events."

In the following section titled "Statute of Limitations," the habeas court concluded that trial counsel did not act deficiently in failing to file a motion to dismiss the charges on the basis of the statute of limitations.[10] In discussing this claim, the habeas court cited *State* v. *Crawford*, supra, 202 Conn. 450, for the proposition that "[w]hen an arrest warrant has been issued, and the prosecutorial official has promptly delivered it to a proper officer for service, he has done all he can under our existing law to initiate prosecution and to set in motion the machinery that will provide notice to the accused of the charges against him" . . . . Noting that trial counsel had reviewed the statute of limitations issue and "did the math" to determine that the warrant had been executed within the statute of limitations, the habeas court denied the claim.

The petitioner claims on appeal that "[t]he habeas court failed to address the postwarrant delay, finding only that [trial counsel] reasonably calculated that the warrant had been issued within the period of limitation." Our review of the record leads us to agree with the petitioner. We will set forth our reasoning.

We again note that "[a] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong." (Internal quotation marks omitted.) *Gonzalez* v. *Commissioner of Correction*, supra, 122 Conn. App. 279. This court has two instructive cases: *Gonzalez* and *Thompson* v. *Commissioner of Correction*, 91 Conn. App. 205, 880 A.2d 965 (2005), appeal dismissed, 280 Conn. 509, 909 A.2d 946 (2006). "To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." *Gonzalez* v. *Commis-*

*sioner of Correction*, supra, 279. In *Thompson* v. *Commissioner of Correction*, supra, 215, this court determined that trial counsel's representation "fell below an objective standard of reasonableness when she did not file the appropriate motion to dismiss . . . on the basis of the staleness of the arrest warrant." The court further noted that trial counsel had not raised the statute of limitations as an affirmative defense, nor did trial counsel present any evidence of the delay in execution of the warrant. Id., 215 n.10. This court disagreed with the habeas court's conclusion that the petitioner in that case had been difficult to apprehend because he had been out of state for only a short period after the issuance of the warrant, had been arrested a number of times in Connecticut and each time had provided his current address. Id., 214–15. This court further concluded that it could not say that the respondent "could show an absen[ce] [of] evidence of a lack of due diligence on the part of the officer charged with executing the warrant . . . ." (Internal quotation marks omitted.) Id., 215.

"To satisfy the prejudice prong, [the petitioner] must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Gonzalez* v. *Commissioner of Correction*, supra, 122 Conn. App. 279. Accordingly, the prejudice analysis turns on whether the petitioner had demonstrated that there was a reasonable probability that he would have prevailed on an affirmative defense based on the delay in the execution of the warrant. See id., 280 (concluding it was unlikely petitioner would have prevailed on motion to dismiss, had he brought one challenging delay in execution of warrant); see also *Thompson* v. *Commissioner of Correction*, supra, 91 Conn. App. 216 ("We conclude, in accordance with the *Strickland* standard, that, but for [trial counsel's] failure to file a motion to dismiss, the result of the proceeding would have been different. Had [trial counsel] filed a motion to dismiss on the basis of the staleness of the warrant, there is a reasonable probability that the trial court would have dismissed that charge due to the delay between the issuance of the warrant and the execution of the warrant more than nine years later.").

In this proceeding, the habeas court's discussion of the petitioner's claim that trial counsel was ineffective in failing to assert a statute of limitations affirmative defense was limited to the issuance of the warrant within the statute of limitations. Although the court discussed the delay in execution of the warrant as it affected the petitioner's defense, the court focused on Cosgrove's testimony that no witnesses went missing and that the witnesses were able to recall the events in concluding that the petitioner's defense had not been hindered.

Proper resolution of the petitioner's claim pursuant to *State* v. *Crawford*, supra, 202 Conn. 443, and *State* v. *Ali*, supra, 233 Conn. 403, would instead require the court to consider whether there was a reasonable probability that the petitioner would have succeeded on a statute of limitations affirmative defense that was based on unreasonable delay in executing the warrant. Such an analysis would include considering whether the petitioner had "[put] forth evidence to suggest that [he] was not elusive, was available and was readily approachable," such that "the burden [would have] shift[ed] to the state to prove that the delay in executing the warrant was not unreasonable." *State* v. *Woodtke*, supra, 130 Conn. App. 740; see *Gonzalez* v. *Commissioner of Correction*, supra, 122 Conn. App. 286 and n.6 (rejecting petitioner's claim that "he had not acted elusively or that his whereabouts were readily ascertainable by the police" and concluding that burden had not shifted to state to prove "it had not acted unreasonably in executing the warrant"). When and if the petitioner put forth that evidence, the burden would shift, and the subsequent evidentiary analysis would include consideration of whether the respondent would have succeeded in proving that the delay was not unreasonable. This analysis would involve examination of the police actions leading up to the execution of the warrant. See *State* v. *Derks*, supra, 155 Conn. App. 95 (considering, inter alia, that police had entered warrant in FBI's National Crime Information Center database and had conducted computer searches for defendant, but that error in database system prevented police from receiving notification of defendant's arrests in Colorado).

Accordingly, having reviewed the petitioner's claim, we conclude that the habeas court abused its discretion in denying certification to appeal.[11] We further conclude that the petitioner is entitled to a new hearing at which he may present his claim that his trial counsel was ineffective for failing to raise a statute of limitations affirmative defense.

II

The petitioner next claims that his trial counsel was ineffective with regard to failures in connection with the forensic interviews conducted with the child victims. He argues that "effective counsel would have consulted an expert on proper interviewing techniques for child sexual abuse complainants, would have introduced an expert at trial to educate the jury about children's suggestibility and proper interviewing techniques, and would have introduced the videotaped interview to cast doubt on the reliability and veracity of the allegations that S and J had made eight years earlier about events that, by 2008, had occurred up to thirteen years earlier."

The following additional facts as found by the habeas court are relevant to the petitioner's claim. Forensic interviews were conducted with the victims on July 17, 2000. At that time, S was thirteen and J was eight. At the time of the criminal trial, S was twenty-one and J was sixteen. The petitioner's trial counsel viewed the videotapes of the forensic interviews before the trial. Trial counsel informed the petitioner of the videotapes and suggested to the petitioner that he review them, but the petitioner declined to do so. Trial counsel was familiar with protocols for conducting forensic interviews, and he did not believe that he needed to consult an expert to educate him concerning the protocols. After viewing the videotapes, trial counsel concluded that the forensic interviews were very damaging to the petitioner's case. His testimony was that the effect of the jury watching the videotapes would have been "devastating  . . . ." The decision to keep the videotapes from the jury was a tactical one, and his testimony was that certain decisions were made during trial to avoid opening the door to the introduction of the videotapes. The state did not offer the videotapes of the forensic interviews into evidence during the petitioner's criminal trial, but did introduce the testimony of S and J.

We first note that our Supreme Court has "never adopted a bright line rule that an expert witness for the defense is necessary in every sexual assault case." *Michael T.* v. *Commissioner of Correction*, 307 Conn. 84, 100–101, 52 A.3d 655 (2012); see also *Peruccio* v. *Commissioner of Correction*, 107 Conn. App. 66, 76 n.7, 943 A.2d 1148 ("[t]he United States Court of Appeals for the Second Circuit has stated: [T]here is no *per se* rule that requires trial attorneys to seek out any expert" [emphasis in original; internal quotation marks omitted]), cert. denied, 287 Conn. 920, 951 A.2d 569 (2008). "[U]nder certain circumstances, [however] the failure to use any expert can result in a determination that a criminal defendant was denied the effective assistance of counsel." (Emphasis omitted.) *Peruccio* v. *Commissioner of Correction*, supra, 76.

"We recently have stated: The second part of the *Strickland* analysis requires more than a showing that the errors made by counsel may have had some effect on the outcome of the proceeding. . . . Rather, [the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. . . . Meeting this admittedly high standard is indeed a herculean task . . . ." (Citation omitted; internal quotation marks omitted.) Id., 79–80. "A court ruling on prejudice must consider the totality of the evidence before the judge

or the jury. . . . Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. . . . The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (Internal quotation marks omitted.) *Minor* v. *Commissioner of Correction*, 150 Conn. App. 756, 762–63, 92 A.3d 1008, cert. denied, 314 Conn. 903, 99 A.3d 1168 (2014).

We find it helpful to review the contrasting circumstances of *Michael T.* v. *Commissioner of Correction*, 144 Conn. App. 45, 62, 71 A.3d 660, cert. granted, 310 Conn. 938, 79 A.3d 891 (2013), a case in which this court determined that the petitioner's trial counsel had rendered ineffective assistance in failing to present expert testimony.[12] Through expert testimony at the habeas trial in *Michael T.*, the petitioner was able to show that an expert would have testified at the petitioner's criminal trial to numerous problems with the forensic interviews conducted in that case. The testimony was that the interviews were conducted in an accusatory atmosphere that was based on an assumption that the child had been sexually abused because of an infection that experts testified at trial was a condition that was sexually transmitted. Id., 51. There was also testimony that the child's disclosure had been tainted because she had been interviewed on at least six occasions, including by her mother and a department investigative social worker, before the forensic interview. Id., 59. The child, initially questioned at age four and one-half, also possessed developmental delays that the expert testified made her more susceptible to contaminating interview approaches. Id., 51–52. We find the present circumstances to be distinguishable.

In the present case, during his habeas trial, the petitioner presented the expert testimony of Nancy Eiswirth, a licensed clinical psychologist. Eiswirth testified generally as to, among other things, the evolution of protocols for conducting forensic interviews of children, the general structure of such interviews, and the types of questions. Eiswirth stated that she had reviewed the videotapes and transcripts of the interviews conducted with the victims in this case. She testified as to a number of issues with both interviews, including that the interviewers used leading questions. She opined that a critical error occurred in the interview with J, in that the interviewer's demonstration using dolls was suggestive. With regard to S's interview, Eiswirth testified that the interviewer had failed to explore whether S had acquired sexual knowledge from sources other than the petitioner. Eiswirth further testified as

to concerns with both interviewers' conclusions.

Christopher Cosgrove, the petitioner's trial counsel, also testified. He stated that he had attended seminars on child sexual abuse that included the area of forensic interviewing of children and had viewed dozens of forensic interview tapes. He testified that he had consulted with forensic experts in previous cases, explaining that he had "gone over [videotapes of forensic interviews] in other cases with [the expert] and shown them to her and she has gone over with me what the protocol should be, you know, as far as leading questions or suggestive behavior . . . ." As to the videotapes in the present case, he had viewed them "probably two or three times at least" and the audiotapes once. He explained that he did not think that "there was anything in those tapes that would [have] helped my client. I think there was a lot in there that would [have] hurt my client." He stated that he thought that the victims were very effective in what they said during their interviews and that the effect on a jury would have been "devastating" for the petitioner. He indicated that he did not see the need to retain an expert in this case. He further testified that he made a tactical decision to avoid cross-examining the victims on their interviews to avoid introduction of the videotapes into evidence.

The petitioner claims that trial counsel was ineffective in failing to introduce the videotapes into evidence. The habeas court found that the petitioner failed to prove that trial counsel's conduct was deficient. In considering the petitioner's claim, we note that "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Watson* v. *Commissioner of Correction*, 111 Conn. App. 160, 170–71, 958 A.2d 782, cert. denied, 290 Conn. 901, 962 A.2d 128 (2008); see also *Adorno* v. *Commissioner of Correction*, 66 Conn. App. 179, 183, 783 A.2d 1202 ("[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy" [internal quotation marks omitted]), cert. denied, 258 Conn. 943, 786 A.2d 428 (2001). In *Watson*, this court concluded that counsel's decision not to introduce a report because it would "invite difficult questions" fell "within the category of strategic decisions that our courts consistently refuse to second-guess." *Watson* v. *Commissioner of Correction*, supra, 171–72.

In this case, the habeas court concluded that "the tactical decision to avoid the introduction of the forensic interviews was an objectively reasonable trial tactic." In so concluding, it expressly noted that it agreed

with trial counsel's assessment that the videotapes were "highly damaging to the petitioner." The court's conclusions are supported by the record. The petitioner's trial counsel testified that "[i]t would be devastating for the jury to see [J] this little girl in the context of the same age and size she was at the time of the alleged incident . . . . And S was thirteen, but in many ways acted quite a bit older than that, and I believe that they were both very . . . effective . . . ." Accordingly, we cannot conclude that the petitioner has overcome the presumption that his trial counsel acted reasonably in deciding not to introduce the videotapes. We agree with the habeas court that counsel's conduct in that respect was not deficient.

With regard to the failure to consult[13] or present an expert, the habeas court concluded that the petitioner had failed to show prejudice. To prevail on his claim, the petitioner would have had to prove that the interviews were so improperly conducted that had trial counsel consulted an expert and presented expert testimony as to the alleged improprieties, the jury would have concluded that the victims' memories had been tainted to the extent that their later in-court testimony was unreliable, thereby causing the jury to have reasonable doubt respecting guilt.[14]

We agree with the habeas court that the petitioner failed to prove prejudice. Although the petitioner provides a number of examples of instances during the interviews in which he claims that the interviewer acted improperly, the petitioner failed to show a reasonable probability that expert testimony concerning such improprieties would have altered the result of his trial.[15] The habeas court had before it the testimony of both interviewers, testimony of the petitioner's expert as to her concerns with the interviews, and the videotapes of the forensic interviews. Utilizing the testimony of the witnesses, the court ultimately made the factual finding that the approach of using "generally open ended [questions] to avoid leading the child" was employed. This finding has support in the record, in that Cosgrove's testimony indicated that he was aware of protocols for conducting forensic interviews, had attended seminars that included information on this topic, had consulted experts in the past, was aware that forensic interviews could be done incorrectly, did not see that in this case, and thus believed he did not need an expert. See *Antonio A.* v. *Commissioner of Correction*, 148 Conn. App. 825, 835, 87 A.3d 600 (noting, in determining whether trial counsel was ineffective for failing to present testimony of forensic psychologist, that "he had considerable training in the area of sexual assault, having attended many seminars and training sessions, and having read books and numerous journal articles"), cert. denied, 312 Conn. 901, 91 A.3d 907 (2014). In the present case, the habeas court did not make any findings that the interviews had been con-

ducted improperly, nor did it credit the petitioner's expert. Thus, we cannot conclude that there is a reasonable probability that had trial counsel consulted with an expert and introduced expert testimony, the jury would have had a reasonable doubt respecting guilt. See *Minor* v. *Commissioner of Correction*, supra, 150 Conn. App. 766 (agreeing with trial court in its conclusion that "the omitted testimony of the three experts would not have changed the jury's assessment of the victim's credibility sufficiently to establish prejudice").

We turn to the petitioner's remaining argument, which is that trial counsel's failure to consult an expert caused the petitioner's inability to counteract the state's expert.[16] We first note that the state's expert testified only that it is typical behavior for child sexual abuse victims to delay disclosure of such abuse. The petitioner argues that had his trial counsel presented an expert, it "would have leveled the playing field" because "once [the state's] expert explained that S and J were not less credible for having delayed disclosure for several years," the petitioner's expert could "explain that the girls were not more credible for the certainty of their testimony, since their memories might have been distorted by biased or suggestive interviewing techniques." (Emphasis omitted.) The respondent replies that trial counsel did undermine the state's expert on delayed disclosure by arguing that the victims had unrestricted access to a number of adults in whom they could have confided about the abuse. Cosgrove testified that he challenged the victims' veracity by highlighting the number of adults in whom they could have confided. In addition, he also advanced other arguments, including that the victims may have fabricated the abuse after being placed in a foster home because the petitioner was preventing them from being adopted and that S resented the petitioner for his strict parenting. "It is well established that [a] reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance and that a tactic that appears ineffective in hindsight may have been sound trial strategy at the time." (Internal quotation marks omitted.) *Boyd* v. *Commissioner of Correction*, 130 Conn. App. 291, 298, 21 A.3d 969, cert. denied, 302 Conn. 926, 28 A.3d 337 (2011).

We conclude that the habeas court properly determined that the petitioner failed to establish that he was prejudiced by his trial counsel's failure to consult with or present an expert.

The judgment is reversed only as to the petitioner's claim of ineffective assistance of his trial counsel in connection with the failure to assert an affirmative defense of the statute of limitations and the case is remanded to the habeas court for further proceedings on that claim in accordance with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the petitioner's full name or to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

[1] At the time of trial, which occurred in 2008, S was twenty-one years old and J was sixteen years old.

[2] The petitioner would touch S's breast and vaginal area, and rub his penis on her until he "urinated." The petitioner would also instruct S to put her mouth on his penis, which she would do until he "urinated" in her mouth.

[3] The petitioner would touch J's breasts and vaginal area.

[4] The petitioner's mother had moved to Florida.

[5] The petitioner filed a motion for articulation on January 21, 2014, which was denied. The petitioner filed a motion for review of the denial of his motion to articulate. This court granted the motion for review, but denied the relief requested therein.

[6] General Statutes § 54-193a provides in relevant part: "Notwithstanding the provisions of section 54-193, no person may be prosecuted for any offense, except a class A felony, involving sexual abuse, sexual exploitation or sexual assault of a minor except within . . . five years from the date the victim notifies any police officer or state's attorney acting in such police officer's or state's attorney's official capacity of the commission of the offense . . . ."

We note that although § 54-193a has been amended since the date of the crimes, the amendments to that statute are not relevant to the claims on appeal. Accordingly, we refer to the current revision.

[7] General Statutes § 54-193 (b), which is within the section entitled "Limitation of prosecution for certain violations or offenses," provides: "No person may be prosecuted for any offense, other than an offense set forth in subsection (a) of this section, for which the punishment is or may be imprisonment in excess of one year, except within five years next after the offense has been committed."

We note that although § 54-193 (b) has been amended since the date of the crimes, the amendments to that statute are not relevant to the claims on appeal. Accordingly, we refer to the current revision.

[8] The statute of limitations applicable in *Crawford* was § 54-193 (b). Although the applicable statute of limitations in the present case is § 54-193a, this court previously has also considered *Crawford*'s "unreasonable delay" test when considering statute of limitations claims under § 54-193a. See *State* v. *Derks*, 155 Conn. App. 87, 93–95,     A.3d    , cert. denied, 315 Conn. 930,    A.3d    (2015); *Gonzalez* v. *Commissioner of Correction*, supra, 122 Conn. App. 280–86.

[9] The court in *State* v. *Ali*, supra, 233 Conn. 411 n.6, distinguished the statute of limitations affirmative defense at issue in that case from an unpursued due process claim, "which [would have] required that he show both that actual prejudice resulted from the delay and that the reasons for the delay were wholly unjustified." See also *State* v. *Woodtke*, 130 Conn. App. 734, 740–41, 25 A.3d 699 (2011) ("A prejudice requirement . . . is only necessary for a due process claim, not a statute of limitations claim. Connecticut courts consistently have considered only two events when ruling on whether a defendant may successfully raise the statute of limitations as an affirmative defense: [1] the issuance of the warrant by a judicial authority; and [2] the execution or service of the warrant on the accused." [Internal quotation marks omitted.]).

[10] "Statutes of limitation are generally considered an affirmative defense which must be proved by the defendant by a preponderance of the evidence. . . . An affirmative defense is presented in the orderly course of a criminal trial after the prosecution has presented its case-in-chief. . . . Practice Book § 41-8 (3) provides, however, that a defendant may *also* raise the statute of limitations defense in a pretrial motion to dismiss." (Citation omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *State* v. *Ward*, 306 Conn. 698, 706–707, 52 A.3d 591 (2012).

[11] In his brief to this court, the respondent asserts an alternative ground for affirming the judgment of the habeas court. The respondent argues that counsel was not ineffective for failing to challenge the eighteen month delay in serving the warrant "[b]ecause [the] petitioner's decision to flee the state tolled the statute of limitations . . . ." In support of this contention, the respondent relies on *State* v. *Ward*, supra, 306 Conn. 698, interpreting General Statutes (Rev. to 1987) § 54-193 (c), which is now § 54-193 (d), and provides:

"If the person against whom an indictment, information or complaint for any of said offenses is brought has fled from and resided out of this state during the period so limited, it may be brought against such person at any time within such period, during which such person resides in this state, after the commission of the offense."

We note that although § 54-193 (d) has been amended since the date of the crimes, the amendments to that statute are not relevant to the claims on appeal. Accordingly, we refer to the current revision.

The respondent did not present this argument to the habeas court. In the petitioner's reply brief, he argues that the record is inadequate for review of this claim. Because we agree with the petitioner that the record is inadequate to review this claim, we decline to consider the respondent's proposed alternative ground for affirmance. See *New Haven* v. *Bonner*, 272 Conn. 489, 497 n.7, 863 A.2d 680 (2005) ("Although the defendant proposed additional alternate grounds for affirmance, the record does not show that she raised any of these claims in the trial court, and the defendant does not claim that she did. Therefore, in the absence of a sufficient record, we decline to address them."). We note, without commenting on its merits, that the respondent is not precluded from raising this argument in the habeas court at the new hearing.

[12] The Supreme Court has granted certification to appeal in *Michael T.* on the following issue: "Did the Appellate Court properly determine that defense counsel provided ineffective assistance by failing to call an expert to testify to the suggestibility of young children and the reliability of a child's recollection one year after the alleged event?" *Michael T.* v. *Commissioner of Correction*, 310 Conn. 938, 79 A.3d 891 (2013).

[13] In *Stephen S.* v. *Commissioner of Correction*, 134 Conn. App. 801, 806, 817, 40 A.3d 796, cert. denied, 304 Conn. 932, 43 A.3d 660 (2012), this court concluded that trial counsel's conduct was not deficient in failing to consult with an expert in the field of child sexual abuse because he had "affirmatively consulted with an expert in a relevant field," a psychiatrist who reviewed the victim's records. The court distinguished the situation from those cases in which trial counsel failed to consult any relevant expert prior to trial. Id., 815. "Because we conclude that the petitioner has failed to satisfy the prejudice prong, we need not determine whether the alleged failure of his counsel [to consult an expert] constituted deficient representation." *Peruccio* v. *Commissioner of Correction*, supra, 107 Conn. App. 73 n.1.

[14] We note, as this court did in considering a claim that counsel was ineffective for failing to present testimony of a forensic psychologist, that "any such expert would have been subject to cross-examination by the prosecution." *Antonio A.* v. *Commissioner of Correction*, 148 Conn. App. 825, 836, 87 A.3d 600, cert. denied, 312 Conn. 901, 91 A.3d 907 (2014). At the habeas trial, the petitioner's expert did concede on cross-examination that S provided many details in her interview without being prompted. The expert also agreed that J had, on at least two occasions, corrected the interviewer with regard to specific facts.

[15] We also conclude that the petitioner failed to prove his trial counsel's conduct was deficient in failing to use an expert witness to point out weaknesses in the victims' testimony. He provides examples of testimony at trial that could have been called into question using statements made in the forensic interviews. We first note that "[a]n attorney's line of questioning on examination of a witness clearly is tactical in nature. [As such, this] court will not, in hindsight, second-guess counsel's trial strategy." (Internal quotation marks omitted.) *Antonio A.* v. *Commissioner of Correction*, supra, 148 Conn. App. 832. Moreover, use of an expert to point out inconsistencies between the victims' trial testimony and statements made in the forensic interview could have had the undesired effect of the videotapes being shown to the jury. See id., 831 (holding trial counsel was not deficient in questioning of witnesses, considering "trial counsel[s] expla[nation] that during cross-examination of the victim at the petitioner's criminal trial, he did not want to engage her regarding the specifics of the sexual assault because he believed it would not have been looked upon favorably by the jury, and he did not want to open the door to the videotape of the forensic interview being shown to the jury because it showed an eight year old girl explaining that her father had abused her sexually"). The habeas court appropriately concluded that "[h]ad Attorney Cosgrove challenged the forensic interviews of the victims, as the petitioner suggests, he would have risked their introduction into evidence, the result of which would have been very damaging to the petitioner's case."

[16] Additionally, the petitioner makes three related claims concerning the postinterview reports. He first claims that the postinterview reports were

not prepared in accordance with General Statutes § 17a-106 (a) because they were completed only by the interviewers rather than by an investigatory team. Second, he claims that the "interviewers' unsupported inferences of reliability and veracity" were "repeated almost verbatim in the affidavit supporting the arrest warrant," and "provided the foundation for the arrest warrant application." He third argues that an expert would have brought to trial counsel's attention that forensic interviewers are not able to distinguish true from false reports of sexual abuse. The petitioner offers no explanation, however, as to how any of these alleged improprieties caused him prejudice. "The petitioner bears the burden of establishing prejudice in his claim of ineffective assistance of counsel." *Hamlin* v. *Commissioner of Correction*, 113 Conn. App. 586, 596, 967 A.2d 525, cert. denied, 291 Conn. 917, 970 A.2d 728 (2009). Accordingly, these claims fail.

————————————————————