******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JUAN F.*
(SC 20385)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

Convicted of sexual assault in the first degree and risk of injury to a child, the defendant appealed to this court, claiming that the trial court had improperly denied his pretrial motion to dismiss for failure to prosecute within the five year limitation period set forth in the applicable statute of limitations ((Rev. to 2001) § 54-193a). In 2001, the defendant moved from his mother's home in Puerto Rico to a home in Hartford, where his uncle, R, R's girlfriend, B, and B's minor child, P, resided. In October, 2001, P reported to R and B that the defendant had sexually assaulted her, and B immediately informed the defendant that he could not stay with them anymore. The police were contacted, and, in November, 2001, they obtained a warrant for the defendant's arrest. When the police attempted to execute the warrant, R and B informed them that the defendant had left Connecticut and was living in Puerto Rico. R and B did not provide the police with the defendant's address in Puerto Rico or the name of the city or town in which he was residing, and R and B did not share that the defendant was residing with his mother. The defendant continued to reside in Puerto Rico from 2001 until 2017, with the exception of a brief period of time during 2010, when he lived in California. The defendant kept a low profile during those sixteen years, as he did not have a driver's license, pay taxes, maintain legitimate employment, or appear on any lease or rental agreement. In May, 2017, the defendant moved from Puerto Rico to Rochester, New York, and, within one month, the defendant was arrested on unrelated charges. The defendant ultimately was returned to Connecticut, and the police served him with the arrest warrant in June, 2017. In support of his motion to dismiss, the defendant contended that, although the arrest warrant had been issued within the applicable five year limitation period, the police did not execute it without unreasonable delay, there having been a sixteen year gap between the issuance of the warrant in 2001 and the execution of the warrant in 2017, and, therefore, that the limitation period was not tolled. In denying the defendant's motion, the trial court concluded that the defendant had failed to demonstrate his availability for arrest during the period between the issuance and the execution of the warrant. On appeal from the judgment of conviction, *held* that the trial court properly denied the defendant's motion to dismiss, as that court's finding that the defendant was not available for arrest during the relevant time period was not clearly erroneous: the defendant did not challenge on appeal, and there was evidence in the record to support, the trial court's findings that the defendant abruptly departed Hartford for Puerto Rico when P made her accusation, the defendant already had relocated by the time the police secured a warrant for his arrest, for almost the entirety of the next sixteen years, the defendant remained in Puerto Rico, during those sixteen years, the defendant led an existence that could be characterized as off the grid, and that these certainly were circumstances that made the defendant difficult to apprehend; moreover, the defendant failed to present any evidence to suggest that his address or other identifying information would have appeared in a public database, and, even if R and B did know the defendant's whereabouts, as the defendant claimed, they never shared that information with the police; furthermore, there was no merit to the defendant's claim that his availability for arrest was established insofar as he did not go to Puerto Rico in order to evade prosecution, as the trial court did not credit the defendant's testimony that he left for Puerto Rico because he was forced to leave R and B's home in Hartford and had no other place to live, and the court found that the defendant's decision to leave Hartford was based, at least in part, on his efforts to avoid prosecution; accordingly, because the defendant did not satisfy his burden of establishing that he was available for arrest, the trial court cor-

rectly determined that the burden did not shift to the state to show the reasonableness of the delay in executing the defendant's arrest warrant.

Argued February 24—officially released July 12, 2022

*Procedural History*

Substitute information charging the defendant with three counts of the crime of sexual assault in the first degree and one count of the crime of risk of injury to a child, brought to the Superior Court in the judicial district of Hartford, where the court, *Gold, J.*, denied the defendant's motion to dismiss; thereafter, the case was tried to the jury before *Gold, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellant (defendant).

*Thadius L. Bochain*, deputy assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *Debra A. Collins*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. The defendant, Juan F., was convicted, after a jury trial, of three counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), and one count of risk of injury to a child in violation of General Statutes (Rev. to 2001) § 53-21 (a) (2). On appeal,[1] the defendant claims that the trial court improperly denied his pretrial motion to dismiss for failure to prosecute him within the five year limitation period set forth in General Statutes (Rev. to 2001) § 54-193a.[2] Specifically, the defendant asserts that, although the court issued a warrant for his arrest within the statute of limitations, the police did not execute the warrant until nearly sixteen years after its issuance. As a result, the defendant argues, the warrant was not executed without unreasonable delay. See, e.g., *State* v. *Crawford*, 202 Conn. 443, 450–51, 521 A.2d 1034 (1987) ("an arrest warrant, when issued within the time limitations . . . must be executed without unreasonable delay"). Therefore, the defendant asserts, the statute of limitations was not tolled, and the trial court should have granted his pretrial motion to dismiss the charges against him. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of this appeal. In early 2001, the defendant moved from Puerto Rico to Hartford. Prior to moving to Hartford, the defendant had been living with his mother in Puerto Rico. When he arrived in Connecticut, he moved into a home with his maternal uncle, R, his uncle's girlfriend, B, and B's six year old daughter, P. The defendant was approximately twenty-one years old.

Around midnight on October 19, 2001, P reported to R and B that the defendant had sexually assaulted her. Upon hearing this allegation, R and B immediately went into the living room of the residence and confronted the defendant with the allegations. In the defendant's presence, P repeated the allegations. The defendant denied the allegations. P responded, "[y]es, you did." B became visibly upset and informed the defendant that he was no longer welcome in their home. After learning of the allegations, B's brothers assaulted the defendant. By November, 2001, the defendant returned to his mother's home in Puerto Rico.

The Hartford police were contacted, and, within days of the disclosure, the police began an investigation. Shortly thereafter, on November 19, 2001, Mark Fowler, a detective with the Hartford Police Department, obtained a warrant for the defendant's arrest. When Fowler attempted to execute the warrant, he was informed by R and B that the defendant had left Connecticut and was living in Puerto Rico. Although Fowler attempted to get the defendant's address in Puerto Rico, neither R nor B

was willing or able to provide him with the defendant's address or the name of the town in which he was residing. They did not share with Fowler that the defendant was residing with his mother in Puerto Rico.

Nevertheless, the trial court expressly found that Fowler prepared and disseminated a poster, indicating that the defendant was wanted by the Hartford Police Department. In addition, Fowler searched the state motor vehicle records, looking for any information related to the defendant's whereabouts. Fowler also conducted an electronic search for the defendant in the Hartford Police Department's local, in-house computer database. The searches yielded no results. Thereafter, Fowler entered the defendant's arrest warrant into the National Crime Information Center (NCIC) database, a national database administered by the Federal Bureau of Investigation and utilized by law enforcement, so that other law enforcement agencies would become aware that the defendant was subject to an outstanding warrant.

The defendant continued to reside in Puerto Rico from 2001 until 2017, with the exception of eight months, during 2010, when he lived in California. During that entire approximately sixteen year period, the defendant did not have a driver's license, did not pay any type of taxes, did not have a job for which taxes were withheld, and did not appear on any lease or other rental agreement. The trial court found that the defendant did not present any evidence to demonstrate that he was "a registered voter, a bank customer, a recipient of public benefits, an account holder with any utility company, or anything else of a similar nature."

While living in Puerto Rico, the defendant was arrested and eventually convicted on two separate occasions. Once, in 2003, he was arrested and convicted of stealing a car. As a result, he was incarcerated from 2003 through 2005. Thereafter, in 2006, the defendant was arrested and convicted of a home burglary. As a result of that conviction, he was incarcerated from 2006 through 2009. For reasons that are not clear, the Hartford police were never notified of the defendant's arrests or convictions despite having entered the defendant's arrest warrant into the NCIC database.

In May, 2017, the defendant moved from Puerto Rico to Rochester, New York. Within one month, the defendant was arrested in Rochester on charges unrelated to the present case. Presumably after finding the defendant's outstanding warrant in the NCIC database, Rochester police also charged the defendant with being a fugitive from justice. The defendant ultimately was returned to Connecticut, and the Hartford police served him with the arrest warrant on June 5, 2017.

Upon his return to Connecticut, the state charged the defendant with three counts of sexual assault in the first degree and one count of risk of injury to a child. The

case was tried to a jury, which found the defendant guilty on all counts. The trial court rendered a judgment of conviction in accordance with the jury's verdict and sentenced the defendant to a total effective sentence of thirty years of incarceration, execution suspended after seventeen years, ten years mandatory minimum, followed by twenty years of probation. This direct appeal followed. Additional relevant facts and procedural history will be set forth as necessary.

We begin by setting forth the applicable standard of review and certain legal principles that govern a statute of limitations defense. "Statutes of limitation[s] are generally considered an affirmative defense which must be proved by [a criminal] defendant by a preponderance of the evidence. . . . An affirmative defense is presented in the orderly course of a criminal trial after the prosecution has presented its case-in-chief. . . . Practice Book § 41-8 (3)[3] provides, however, that a defendant may also raise the statute of limitations defense in a pretrial motion to dismiss." (Citation omitted; footnote altered; internal quotation marks omitted.) *State* v. *Ward*, 306 Conn. 698, 706–707, 52 A.3d 591 (2012).

This court previously has concluded that, "[w]hen an arrest warrant has been issued, and the prosecutorial official has promptly delivered it to a proper officer for service, he has done all he can under our existing law to initiate prosecution and to set in motion the machinery that will provide notice to the accused of the charges against him. When the prosecutorial authority has done everything possible within the period of limitation to evidence and effectuate an intent to prosecute, the statute of limitations is tolled. . . . We also recognized, however, that some limit as to when an arrest warrant must be executed after its issuance is necessary in order to prevent the disadvantages to an accused attending stale prosecutions, a primary purpose of statutes of limitation[s]. . . . Accordingly, we determined that, in order to toll the statute of limitations, an arrest warrant, when issued within the time limitations [specified by statute], must be executed without unreasonable delay. . . . In reaching that determination, we expressly declined [to] adopt a per se approach as to what period of time to execute an arrest warrant is reasonable. A reasonable period of time is a question of fact that will depend on the circumstances of each case. If the facts indicate that an accused consciously eluded the authorities, or for other reasons was difficult to apprehend, these factors will be considered in determining what time is reasonable. If, on the other hand, the accused did not relocate or take evasive action to avoid apprehension, failure to execute an arrest warrant for even a short period of time might be unreasonable and fail to toll the statute of limitations." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Swebilius*, 325 Conn. 793, 802–803, 159 A.3d 1099 (2017), quoting *State* v. *Crawford*, supra, 202 Conn. 450–51.

We have adopted a two step test to determine whether an arrest warrant was executed without unreasonable delay. Specifically, in *Swebilius*, we held that, "once [a] defendant has demonstrated his availability for arrest, he has done all that is required to carry his burden; the burden then shifts to the state to demonstrate that any period of delay in executing the warrant was not unreasonable." *State* v. *Swebilius*, supra, 325 Conn. 804. "When a defendant presents evidence that [he] was not elusive, was available and was readily approachable . . . [he] has discharged [his] burden under *Crawford*." (Citation omitted; internal quotation marks omitted.) Id., 804–805.

"Once the defendant has presented evidence of his availability for arrest, it is reasonable and proper that the burden should then shift to the state to explain why, notwithstanding the defendant's availability during the statutory period, the delay in his arrest was reasonable. Doing so allocates burdens efficiently by requiring each party to bring forth evidence uniquely within its knowledge. Such a burden shifting model is also consistent with the distribution of burdens with respect to other affirmative defenses in Connecticut, few of which require a defendant to present affirmative evidence of matters beyond his personal ken. To dispense with that model . . . would needlessly impose a significant burden on the defendant—and the judicial system—when the state is in a far better position to determine what efforts were undertaken to ensure the defendant's prompt arrest." (Footnote omitted.) Id., 807–808.

It is axiomatic that, "[i]n reviewing a motion to dismiss, appellate courts exercise plenary review over the trial court's ultimate legal conclusions, even as the facts underlying the decision are reviewed only for clear error." Id., 801 n.6. In the present case, the trial court denied the defendant's motion to dismiss on the ground that the defendant had failed to demonstrate his availability during the statutory period. The finding of availability is a factual finding in this context. See, e.g., id., 807 (referring to availability issue as factual finding by trial court). Indeed, this court has explained that, "if the defendant can demonstrate his availability during the statutory period, the state must make some effort to serve the arrest warrant before the relevant statute of limitations expires, or to offer some evidence explaining why its failure to do so was reasonable under the circumstances. . . . That fact sensitive determination, however, is a matter properly within the reasoned judgment of the fact finder." (Footnote omitted.) Id., 814–15. Accordingly, we review the trial court's finding that the defendant was unavailable for clear error.

A trial court's factual finding constitutes clear error "when there is no evidence in the record to support [the court's finding of fact], or when, although there is evidence to support the factual finding, the reviewing court, upon consideration of the entire record, is left

with a definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *State* v. *Wang*, 323 Conn. 115, 129, 145 A.3d 906 (2016), cert. denied, U.S. , 137 S. Ct. 1069, 197 L. Ed. 2d 188 (2017). "[W]e give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass [on] the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Campbell*, 328 Conn. 444, 487, 180 A.3d 882 (2018).

Here, the trial court expressly found that, "[f]ar from having demonstrated that [the defendant] was 'not elusive, was available and was readily approachable'; [internal quotation marks omitted] [*State* v.] *Swebilius*, supra, 325 Conn. 805; the defendant's testimony evidenced the contrary: that he abruptly departed from Hartford when . . . the accusation against him was made, and he never returned." In support of that finding, the trial court explained that "[t]he undisputed evidence in this case shows that the defendant already had relocated out-of-state by the time the police had secured a warrant for his arrest. For essentially the entirety of the next sixteen years, the defendant remained in Puerto Rico, far from the police department seeking his apprehension. Then, within thirty days of his 2017 arrival in Rochester, the defendant was located by New York authorities, extradited to Connecticut, and promptly served with the warrant."

The trial court further found that, "throughout that sixteen year period, the defendant led an existence that might once have been described as being 'under the radar,' and might now, under more current parlance, be characterized as 'off the grid.' By his own admission, at no point between 2001 until 2017 did the defendant ever hold a driver's license, pay any type of taxes, maintain legitimate (as opposed to under the table) employment, or appear on any lease or other rental agreement." These are certainly circumstances that made the defendant difficult to apprehend. The trial court also found that the defendant failed to produce "any evidence suggesting that his address or other personal identifying information would have appeared in any other public database . . . ." The defendant does not challenge any of these findings on appeal, and there is evidence in the record to support them.

Instead, the defendant asserts that R and B would have known his location and have been able to locate him because he was living with his mother in her home, which is where he had lived prior to moving to Hartford. But, even if R and B did know the defendant's whereabouts, they never shared that information with the Hartford police. Even after Fowler sought their help in locating the defendant, neither R nor B relayed to him that the defendant was residing with his mother or the town in which his mother resided.

In fact, on this point, the trial court found that "Fowler learned from [R] and [B] that the defendant had left Connecticut and was living in Puerto Rico. Fowler attempted to get more detailed information from these individuals as to the defendant's specific address in Puerto Rico, but neither was . . . able or willing to provide it. Fowler therefore did not know the specific town or city in Puerto Rico to which the defendant had relocated . . . [or] even that the defendant was residing there with his mother." Indeed, the trial court noted that "Fowler testified that [R] had not been forthcoming." Aside from suggesting that Fowler should have been able to locate the defendant in Puerto Rico— simply because R and B allegedly knew his whereabouts—the defendant does not challenge these findings as clearly erroneous, and we conclude that there is evidence in the record to support them.

Rather than challenging the trial court's findings, the defendant claims that his availability also was established because he did not go to Puerto Rico in order to evade prosecution but, instead, simply returned home to Puerto Rico when he was kicked out of R's house in Hartford. In doing so, the defendant misapprehends the governing law. As we explained previously in this opinion, a statute of limitations defense is an affirmative defense, which the defendant has the burden of proving by a preponderance of the evidence. See, e.g., *State* v. *Ward*, supra, 306 Conn. 706–707. Indeed, even the burden shifting framework we adopted in *Swebilius* places the initial burden on the defendant to prove that he was "not elusive, was available and was readily approachable . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Swebilius*, supra, 325 Conn. 805.

In the present case, the defendant testified that he returned home to live with his mother in Puerto Rico and that he continued to live in Puerto Rico for the majority of the sixteen years leading up to his eventual arrest for the crimes at issue in this appeal. The trial court did not credit his testimony that his intent in returning home was simply based on the fact that he was kicked out and had no place to live. Instead, the trial court found that the defendant "abruptly departed from Hartford when (and because) the accusation against him was made, and he never returned." The trial court also found, and the defendant does not dispute, that "[the defendant's] testimony was devoid of any evidence suggesting that his address or other personal identifying information would have appeared in any other public database because of his status, at any time, as, for example, a registered voter, a bank customer, a recipient of public benefits, an account holder with any utility company, or anything else of a similar nature." The trial court further found that "the defendant's decision to leave and [to] stay away from Hart-

ford was based, at least in part, on his intent to avoid prosecution . . . ." On the basis of these factual findings, which are based on substantial evidence in the record, we cannot conclude that the defendant established his availability.

Moreover, as the trial court acknowledged, our case law does not require that the state establish that the defendant left the state in order to avoid prosecution. Instead, it is clear that, once a defendant asserts that his prosecution is barred by the applicable statute of limitations, he has the burden of demonstrating that he was "not elusive, was available and was readily approachable   . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Swebilius*, supra, 325 Conn. 805. The state has no burden to prove that the defendant left the jurisdiction to avoid prosecution. Indeed, the state has no burden of proof until the defendant establishes his availability. Although the defendant's intent in leaving the state may be relevant and may factor into the analysis, the primary question is whether the defendant has proven that he was "not elusive, was available and was readily approachable" once the arrest warrant had been issued; (internal quotation marks omitted) id.; not whether the state has proven that he left the jurisdiction in order to evade arrest or prosecution. See, e.g., *Roger B.* v. *Commissioner of Correction*, 190 Conn. App. 817, 841, 212 A.3d 693 ("The issue in [this] case, however, is not whether the statute of limitations had been tolled while the [defendant] was absent from the state or even why he left the state. The issue is whether he was elusive, unavailable, or unapproachable once the warrant for his arrest had been issued."), cert. denied, 333 Conn. 929, 218 A.3d 70 (2019), and cert. denied, 333 Conn. 929, 218 A.3d 71 (2019).

Here, as we mentioned, the trial court found that the defendant did not satisfy his burden of establishing that he was available for arrest. Therefore, the trial court correctly determined that the burden did not shift to the state to show the reasonableness of the delay in executing the defendant's arrest warrant. See, e.g., *Gonzalez* v. *Commissioner of Correction*, 122 Conn. App. 271, 285–86, 999 A.2d 781 (fact that defendant left state and relocated to Puerto Rico without leaving contact information with police and within days of learning of allegations of sexual abuse did not support finding of availability such that burden shifted to state to show reasonableness of delay in executing arrest warrant), cert. denied, 298 Conn. 913, 4 A.3d 831 (2010).

On the basis of the foregoing, we conclude that the trial court's finding that the defendant was not available is not clearly erroneous. Therefore, the defendant did not satisfy his burden of proving his affirmative defense, and we need not address the second step of the *Swebilius* test—namely, whether the state established that it executed the defendant's arrest warrant without unrea-

sonable delay. See *State* v. *Swebilius*, supra, 325 Conn. 804. Accordingly, we conclude that the trial court properly denied the defendant's motion to dismiss.

The judgment is affirmed.

In this opinion the other justices concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b) (3).

[2] General Statutes (Rev. to 2001) § 54-193a provides in relevant part: "[N]o person may be prosecuted for any offense involving sexual abuse, sexual exploitation or sexual assault of a minor except . . . within five years from the date the victim notifies any police officer or state's attorney acting in his official capacity of the commission of the offense . . . provided in no event shall such period of time be less than five years after the commission of the offense."

The parties do not dispute that this is the applicable statute of limitations.

[3] Practice Book § 41-8 provides in relevant part: "The following defenses or objections, if capable of determination without a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the information:

* * *

"(3) Statute of limitations . . . ."